IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JERRY DALE BRYANT, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. |
| | § | |
| v. | § | SA-16-CA-0135 |
| | § | |
| MOONEY INTERNATIONAL CORPORATION | § | Jury Demanded |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

This is an action for unlawful discrimination brought under the Americans with Disabilities Act, as amended (hereinafter "ADA") 42 U.S.C. § 12101 *et. seq.* and the Texas Labor Code, as amended, § 21.001 *et. seq.* For causes of action, Jerry Dale Bryant, Plaintiff, shows as follows:

### I.     JURISDICTION AND VENUE

1.     Plaintiff brings his claims under federal and state law. Plaintiff sues Defendant for violations of the ADA, as amended, 42 U.S.C. §12101, *et seq.* This Court has federal question jurisdiction over those claims under 28 U.S.C. §1331. Plaintiff also sues Defendant for violations of the Texas Labor Code, as amended, §21.001, *et seq.* Plaintiff's claims under the Texas Labor Code form part of the same case or controversy under Article III of the United States Constitution as his ADAAA claims. As a result, this Court has jurisdiction over those claims under 28 U.S.C. §1367(a).

2.     Inasmuch as Defendant's principal place of business is in Kerr County, Texas, and all or a substantial part of the acts or omissions giving rise to the Plaintiff's causes of action occurred in

or around Kerr County, Texas, venue is proper in this District and Division under 28 U.S.C. §1391(b)(1) and (2).

## II.     THE PARTIES

3.     Plaintiff Jerry Dale Bryant is an individual residing in Pima County, Arizona. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. §12111(4), and Plaintiff was a "qualified individual" within the meaning of 42 U.S.C. §12111(8).

4.     Defendant Mooney International Corporation is a Texas corporation whose principal place of business is in Kerrville, Texas. Defendant is authorized to do business, and is doing business, in the State of Texas. At times relevant to the Plaintiff's claims asserted herein, Defendant was an "employer" within the meaning of 42 U.S.C. §12111(5)(A). Defendant may be served with process by serving its registered agent, Vcorp Services, LLC, 10101 Fondren Road, Suite 515, Houston, Texas 77096.

## III.     FACTS

5.     Defendant is an aircraft manufacturing company that produces fixed wing, single engine, general aviation aircraft. Plaintiff worked for Defendant from his date of hire on September 22, 2014 until the date of his unlawful termination on March 6, 2015. Defendant fired him, without any prior warning, on March 6, 2015. Defendant fired him only ten days after learning that he had been diagnosed with Chronic Obstructive Pulmonary Disease (COPD).

6.     Defendant hired Plaintiff as a manufacturing engineer on September 22, 2014. Plaintiff held the position of manufacturing engineer throughout his employment with Defendant. Throughout his employment, Plaintiff reported directly to Defendant's manufacturing manager, Mr. Rodney Long.

7. Plaintiff never received a formal written reprimand or warning prior to his termination on March 6, 2015.

8. In December 2014, Defendant gave Plaintiff a favorable performance review. As a result of the performance review, Defendant raised Plaintiff's salary by $5,000.00 per year.

9. An individual has a "disability" under the ADA if he or she actually has or has a record of having "a physical or mental impairment that substantially limits one or more major life activities of such individual," or if he or she is regarded as having a disability. 42 U.S.C. §12102(1)(A)-(C).

10. Because this case arose in 2015, the Court must determine Plaintiff's disability status under the recent amendments to the Americans with Disabilities Act. Under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), "disability" must "be construed in favor of broad coverage of individuals under this chapter[.]" 42 U.S.C. §12102(4)(a). Similarly, the terms "major life activity," and "substantial limitation" also must be construed consistent with the purposes of the ADAAA. *See* 42 U.S.C. §§12102(2)(A)-(B), 12102(4)(B)-(D). Finally, under the ADAAA Plaintiff's disability must be assessed in its active state, not in remission. 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii). Furthermore, his disability must also be assessed without regard to mitigating measures like medical treatments. 42 U.S.C. § 12102(4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(vi). The Texas Labor Code was also amended in 2009 to conform to the ADAAA.

11. Beginning in or around January, 2015, Plaintiff began suffering from symptoms of what would be diagnosed as COPD on February 23, 2015. Plaintiff's COPD is a permanent physical impairment. In its active state, Plaintiff's COPD is a disability as defined by the ADAAA because it is an impairment that substantially limits him in various major life activities, including those discussed below.

12.     Plaintiff's COPD is a physiological impairment that causes extreme difficulty breathing. Specifically, it significantly reduces his lung capacity and thus substantially limits his respiratory function, and the major life activity of breathing. Respiratory function and breathing are specifically recognized as major life activities under the ADA. 42 U.S.C. §12102(2)(A)-(B); 29 C.F.R. §1630.2(i)(1).

13.     Plaintiff's extreme difficulty breathing and significant disruption in his respiratory function result in a significant loss of stamina. As a result, in addition to limiting his respiratory function and breathing, Plaintiff's physical impairment also substantially limits him in the performance of other major life activities, including standing, walking, lifting, and sleeping. *See* 42 U.S.C. §12102(2)(A); 29 C.F.R. §1630.2(i)(1).

14.     Although the Court must assess Plaintiff's disability without regard to mitigating measures, Plaintiff must use medical treatments in order to function at all. Plaintiff uses a Symbicort inhaler twice a day and carries a Proair HFA albuterol sulfate inhaler for times when his COPD is causing shortness of breath. He uses the Proair two to five times per day.

15.     In its active state, and if left untreated, Plaintiff's COPD would cause him to become short of breath, which would likely result in loss of consciousness or perhaps death.

16.     Although Plaintiff began suffering from symptoms of COPD in early January, 2015, Plaintiff's physician diagnosed him with COPD on or about February 23, 2015.

17.     On February 24, 2015, Plaintiff returned to work and told Mr. Long about his diagnosis.

18.     During that same conversation, Plaintiff told Mr. Long about the limitations his COPD imposed on him. Specifically, during that conversation on February 24, 2015, Plaintiff told Mr. Long that his COPD was permanent, and that it caused shortness of breath, limited stamina, and difficulty sleeping.

19.     Even before February 24, 2015, Plaintiff had spoken with Mr. Long extensively about his symptoms, and their effects on his ability to work.

20.     As noted, Defendant hired Plaintiff as a manufacturing engineer, which is a desk job. Nevertheless, in late February or early March 2015, after Plaintiff told Mr. Long about his COPD symptoms, Mr. Long told Plaintiff that he (Plaintiff) would have to perform the work of a machinist.  Plaintiff had performed machinist work in the past.  However, he had, at least primarily, done so before he began suffering symptoms of COPD.  In addition, the job that Mr. Long put him on in late February or early March 2015 was considerably more demanding than any machinist work he had done in the past.

21.     Defendant thus made Plaintiff to perform the considerably more physically demanding functions of a machinist.  There were other individuals who could have performed those duties.

22.     The job of machinist required Plaintiff to stand for extended periods of time at a machine and move heavy metal bars and plates. It also required walking between the machine and his desk, a distance of approximately 30-40 feet.  In short, it required considerable physical exertion.

23.     By contrast, the essential job functions of a manufacturing engineer (for which Defendant hired him) were maintaining digital production, creating and editing existing manufacturing work orders, working with production staff to insure that the job order accurately reflects the actual job, and working with other manufacturing engineers to create new job orders for new or redesigned parts.  Unlike those of a machinist, most or all of these duties were performed while sitting at a desk in a climate controlled office.

24.     Plaintiff was nevertheless required to perform the duties of a machinist in late February and early March of 2015, after Defendant learned of his COPD diagnosis.  The physically demanding nature of the machinist duties, along with the frigid temperatures in the shop,

exacerbated Plaintiff's COPD and he became increasingly unwell.

25.     In large part as a result of his impairment, Plaintiff was absent several days in the week prior to his termination on March 6, 2015. Plaintiff was absent for part of the work day on March 2, 2015 in order to take his daughter to a dentist appointment.  Defendant gave Plaintiff prior approval to do so.  This absence was excused under Defendant's attendance policy.

26.     Plaintiff worked a full day on March 3, 2015.

27.     On Wednesday, March 4, 2015, Plaintiff had to leave work at 9:43 a.m. because of the effects of his COPD.  Plaintiff sent an email to Mr. Long, informing him that he was sick and going home.

28.     Plaintiff returned to work on March 5.  Upon his return to work, Mr. Long complained that Mr. Bryant left on March 4, 2015, without telling him.  Plaintiff then explained to Mr. Long that he had to leave as a result of his impairment, and Plaintiff showed Mr. Long the email that he drafted and thought he had sent before he left on the previous day.

29.     On that same day, Thursday, March 5, 2015, Plaintiff remained ill, but he planned to stay at work that day.  However, he ended up having to leave work at approximately 11:30 a.m. because he received a call from his wife who told him that the heater in his home was malfunctioning.  It was relatively cold in the Kerrville area that day.

30.     Plaintiff told Mr. Long that he had to leave work early on March 5.

31.     That evening, Plaintiff had extreme difficulty sleeping because of his COPD.  He did not fall asleep until roughly 5:00 a.m. on March 6.  As a result of his exhaustion, Plaintiff inadvertently overslept.  He awoke just before noon on the morning of March 6.  Soon after he awoke, Plaintiff checked his email to find an email from Mr. Long terminating his employment, effective immediately.  Mr. Long sent that email at or around 11:51 a.m. on March 6, 2015.

32. Defendant maintained an attendance policy at the time of Plaintiff's termination. That policy contains a step discipline procedure under which Defendant must provide (1) a verbal warning upon early signs of poor attendance; (2) a first written warning for unexcused absences exceeding 24 hours in a 90-day period, or 72 hours in a year; (3) a second written warning for unexcused absences exceeding 28 hours in a 90-day period, or 80 hours in a year; and (4) discharge when unexcused absences exceed 32 hours in a 90-day period, or 88 hours in a year.

33. The Defendant's attendance policy makes an exception for, and thus excuses, absences due to "verifiable illness." The policy defines "verifiable illness" as one for which "[a] supervisor or company nurse observes [the] employee's symptoms, or [for which the] employee provides a valid doctor's excuse."

34. Defendant contends that it fired Plaintiff solely due to his failure to comply with its attendance policy.

35. Defendant's stated reason is false.

36. In fact, Defendant failed to give Plaintiff any formal written warnings, much less the two required under the policy. In addition, Defendant fired Plaintiff before he incurred 32 hours of unexcused absences in a 90-day period. Finally, the absences on March 4 and March 6 were entirely the result of a verifiable illness, which illness was caused by his disability.

37. Defendant failed to follow its attendance policy when it terminated Plaintiff for an alleged failing to follow Defendant's attendance policy.

38. Defendant subjected Plaintiff to several unlawful acts under the ADA because of an actual or perceived physical impairment. First, it unlawfully terminated Plaintiff's employment on or about March 6, 2015. Second, it failed to provide a reasonable accommodation for Plaintiff's disability by (1) not permitting him to perform the duties of a manufacturing engineer, but instead

requiring him to perform the considerably more demanding duties of a machinist, a position for which he was not hired and (2) failing to allow him to take a reasonable amount of time off from work due to the effects of his impairment.

## IV.   CAUSES OF ACTION

### Count One: Unlawful Discharge Because of Disability

39.   Plaintiff restates and incorporates herein by reference paragraphs 1 through 38, inclusive.

40.   Defendant has unlawfully discriminated against Plaintiff by discharging him on or about March 6, 2015.  Defendant discharged Plaintiff on the basis of his actual disability, a record of his having a disability, and/or Defendant having regarded Plaintiff as having a disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12102, *et seq*. and the Texas Labor Code, as amended, §21.001, *et seq*.

41.   As a direct and proximate result of the Defendant's unlawful acts, Plaintiff has suffered economic damages in the form of lost wages, both past and future, lost benefits, both past and future, and all other compensation he would have received because of his employment with the Defendant, for which he hereby sues.

42.   Plaintiff has also suffered compensatory damages in the form of future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, for which he hereby sues.

43.   Defendant committed the unlawful acts described herein with malice or reckless indifference to Plaintiff's federally and state protected rights.  Plaintiff is thus entitled to an award of punitive damages, for which he hereby sues.

44.   Plaintiff hereby pleads for an award of reasonable and necessary attorney's fees, costs, litigation expenses, and expert fees, for which he hereby sues.

### Count Two: Unlawful Failure to Provide Reasonable Accommodation

45. Plaintiff restates and incorporates herein by reference paragraphs 1 through 38, inclusive.

46. Defendant has unlawfully discriminated against Plaintiff by failing to provide one or more reasonable accommodations to the known physical or mental limitations of the Plaintiff in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12102, *et seq*. and the Texas Labor Code, as amended, §21.001, *et seq*.

47. As a direct and proximate result of the Defendant's unlawful acts, Plaintiff has suffered economic damages in the form of lost wages, both past and future, lost benefits, both past and future, and all other compensation he would have received because of his employment with the Defendant, for which he hereby sues.

48. Plaintiff has also suffered compensatory damages in the form of future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, for which he hereby sues.

49. Defendant committed the unlawful acts described herein with malice or reckless indifference to Plaintiff's federally and state protected rights. Plaintiff is thus entitled to an award of punitive damages, for which he hereby sues.

50. Plaintiff hereby pleads for an award of reasonable and necessary attorney's fees, costs, litigation expenses, and expert fees, for which he hereby sues.

### V.   JURY DEMAND

51. Plaintiff hereby demands a trial by jury on all claims, issues, and defenses so triable.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court order a jury trial at the earliest practicable date and that, upon final hearing, this Court grant Plaintiff judgment against Defendant for the following:

a. Actual and economic damages, including appropriate back pay and all other benefits;

b. Reinstatement;

c. Front pay, including benefits, in lieu of reinstatement;

d. Compensatory damages;

e. Punitive damages;

f. All other relief, including injunctive relief, necessary to make Plaintiff whole, or otherwise remedy the effects of Defendant's violations of the Americans with Disabilities Act, as amended 42 U.S.C. §12102, *et seq.* and/or the Texas Labor Code, as amended, §21.001, *et seq.*;

g. Attorneys' fees;

h. Pre-judgment and post-judgment interest in the maximum amounts allowed by law;

i. All costs and litigation expenses;

j. Expert witness fees; and

k. Such other and further relief, legal or equitable, to which Plaintiff may be entitled.

Respectfully Submitted,

**MORELAND LAW FIRM, P.C.**
13590 Ranch Road 12
Wimberley, Texas 78676
(512) 782-0567
(512) 782-0605 - telecopier

By:  */s/ Edmond S. Moreland, Jr.*
         Edmond S. Moreland, Jr.
         State Bar No. 24002644
         edmond@morelandlaw.com

**ATTORNEY FOR PLAINTIFF**